IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 17–cr-40062-SMY |
|  | ) |  |
|  | ) |  |
| RYAN A. THORPE, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## SENTENCING OPINION AND STATEMENT OF REASONS PURSUANT TO 18 U.S.C. § 3553(c)[1]

### INDICTMENT AND OFFENSE CONDUCT

By Indictment returned on October 3, 2017, Defendant Ryan A. Thorpe was charged with (and ultimately pled guilty to) 3 Counts of wire fraud (18 U.S.C. § 1343) and 2 Counts of embezzlement from a local government that receives federal funds (18 U.S.C. § 666(a)(1)(A)). (Doc. 1). The charges stem from Thorpe's use of his position of as City Treasurer for Zeigler, Illinois to embezzle more than $300,000 for personal gain.

As treasurer, Thorpe had the authority to draw checks on the city's general account at Southern Illinois Bank, although the checks needed countersignatures from other city employees. (Stipulation of Facts, Doc. 24 at ¶ 3). From at least March 4, 2013 to August 3, 2017, he embezzled funds by having city employees sign blank checks under the guise of paying legitimate city expenses, and then later making them payable to himself. (Id. at ¶¶ 4-5). In order to make the checks appear legitimate, Thorpe generally made the check amounts equal to or near amounts actually due to city contractors or vendors. (Id. at ¶ 5). He would go to Southern Illinois Bank branches (frequently other than the one located in Zeigler) and either deposit the

---

[1] This Sentencing Opinion supplements the findings made on the record during Defendant's sentencing hearing on June 12, 2018.

check into his personal account, cash the check, or a combination thereof. (Id. at ¶¶ 6-7). Thorpe altered the check copies by whiting out his name as payee and substituting a regular vendor or contractor. (Id. at ¶8). He would then photocopy the altered check image and attach it to the original bank statement in city records as if it had come from the bank and shred the whited-out copy. (Id.). Thorpe also prepared false Treasurer's Reports for the Zeigler City Council; inflating reported amounts paid to actual contractors and vendors in order to conceal the funds he diverted to himself. (Id. at ¶ 9). As part of his scheme, Thorpe caused at least three wire transfers between Southern Illinois Bank and a processing service in Texas. (Id. at ¶ 10).

In total, Thorpe embezzled approximately $321,399.22 from the City of Zeigler and used the money for personal debts, expenses and purchases. (Id. at ¶ 12). Among those purchases were two pieces of real estate, two motorcycles, two Utility Task Vehicles ("UTVs"), a diamond ring, a tandem-axle utility trailer, a portable "log cabin style" building, four AR-15 rifles and 22 other firearms. (Id. at ¶ 13).

## **SENTENCING HEARING**

Prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSR") (Doc. 35). Under the United States Sentencing Commission Guidelines ("Guidelines"), Probation determined that Thorpe's Base Offense Level was 7, added enhancements totaling 14 levels based on the loss amount (12) and the abuse of a position of public trust (2). (Id.). Probation then applied a 3-level total reduction for Thorpe's acceptance of responsibility, yielding a Total Offense Level of 18. With a Criminal History Category of I, the calculated Guidelines range was 27-33 months for imprisonment, 1-3 years for supervised release, a fine range of $10,000 to $100,000, and restitution in the amount of $321,399.22.

At the sentencing hearing, Zeigler's City Attorney, Rebecca Whittington, presented a victim's statement. She noted the seriousness of the Thorpe's crime and described how it

undermined public trust in governmental officials.  Ms. Whittington spoke in detail about the practical impact suffered by Zeigler, its employees and its citizens.  Zeigler was forced to take out a $182,000 bank loan against future tax revenues to cover normal operating expenses because of the shortfall caused by Thorpe's embezzlement.  He also prevented mandatory payments into police and other municipal employee retirement accounts.  Thorpe's efforts to conceal his thefts have thrown city records into complete disarray, and have required extensive efforts to untangle the mess, ensure that employees were paid and make good the obligations he falsely indicated he had paid.  Thorpe's actions prevented the city from providing data necessary to receive a federal grant to purchase a new police squad car.

The Government cited many of these same issues in its Sentencing Memorandum (Doc. 29) and during oral argument at the sentencing hearing.  The Government also pointed out the significant period of time over which Thorpe perpetrated his crimes and the lengths he went to in order to conceal them, demonstrating the calculated and deliberate nature of his conduct.

Defendant's counsel characterized Thorpe's conduct as "a very bad decision" and pointed out his cooperation with law enforcement once confronted with his crimes, his lack of significant criminal history, and the burden on him and his family of living among the people he defrauded.  Counsel argued that with Defendant's current employment working 60 hours per week, he could provide for his family and make significant restitution payments.  Thorpe then made his allocution, stating that he was the sole provider for his family,[2] and that he could not make restitution if he couldn't keep his job.

Based on the PSR, the Government's Sentencing Memorandum, Counsels' oral arguments, Thorpe's allocution, and my consideration of the 18 U.S.C. § 3553(a) factors, I sentenced Thorpe to an above-guidelines term of imprisonment of 48 months, 2-years supervised

---

[2] His wife, an 18 year old son and a 12 year old daughter, according to the PSR.  Defendant also has an older daughter who was pregnant at the time of sentencing.

release, a $500 special assessment ($100 for each Count) and restitution of $321,399.22. I also incorporated my Preliminary Order of Forfeiture (Doc. 27) (the Government and Thorpe agreed that he would be credited $35,872.74 for items turned over to Zeigler prior to sentencing (Doc. 29 at 12)).

## LEGAL ANALYSIS

### Legal Standard

In 2005, the United States Supreme Court held that the United States Sentencing Commission's Guidelines were "effectively advisory." *United States v. Booker*, 543 U.S. 220, 245 (2005). The Court later clarified that the Guidelines are "advisory only." *Kimbrough v. United States*, 552 U.S. 85, 91 (2007). That said, "a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain her conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *United States v. Henshaw*, 880 F.3d 392, 396 (7th Cir. 2018) (quoting *Gall v. United States,* 552 U.S. 38, 46 (2007)). "[A] major departure should be supported by a more significant justification than a minor one." *Gall* at 50.

The process for determining an appropriate sentence is relatively simple, though not always straightforward:

> First, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.... [T]he Guidelines should be the starting point and the initial benchmark. The district court must then consider the arguments of the parties and the factors set forth in § 3553(a). When determining a sentence, the court must make an individualized assessment based on the facts presented. If [it] decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. Finally, [a]fter settling on the appropriate sentence, [the court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*United States v. Pankow*, 884 F.3d 785, 793 (7th Cir. 2018) (citing *Gall,* 552 U.S. at 50-51 and

*Peugh v. United States*, 569 U.S. 530 (2013)) (internal quotation marks omitted).  At the heart of the sentencing process is consideration of the Section 3553(a) factors, which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
 (B) to afford adequate deterrence to criminal conduct;
 (C) to protect the public from further crimes of the defendant; and
 (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--
 (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines….

(5) any pertinent policy statement;
 (A) issued by the Sentencing Commission….;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In assessing how the various statutory sentencing factors apply to an individual defendant, the Court "may not presume that the Guidelines range is reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009) (quoting *Gall* 552 U.S. at 50).  Similarly, a sentence outside the Guidelines range "must not be presumed unreasonable." *United States v. McIlrath*, 512 F.3d 421, 426 (7th Cir. 2008).

## Sentencing Methodology

Consistent with the above-referenced principles, I began by determining the applicable Guidelines range.  I agreed with Probation's calculation – that Thorpe's conduct and background

yielded a Total Offense Level of 18 and a Criminal History Category of I, leading to a Guidelines range of 27-33 months imprisonment, 1-3 years for supervised release, a fine range of $10,000 to $100,000, and restitution payable in the amount of $321,399.22. I then considered whether any departures pursuant to the Guidelines were available and appropriate, and I determined that no departure was warranted. Finally, I considered whether to vary from the Guidelines range based on my independent obligation to apply the 18 U.S.C. § 3553(a) factors.

### *Section 3553(a) Analysis*

Section 3553(a) directs a sentencing court to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing including, to reflect the seriousness of the crime, to promote respect for the law, to provide just punishment, to deter criminal conduct, to protect the public from future crimes by the defendant, and to promote rehabilitation. *United States v. Jackson*, 537 F. Supp. 2d 990, 991 (E.D. Wis. 2008). The remaining 3553(a) factors aid courts in making this determination, and are largely discussed above (i.e. nature of offense, defendant characteristics, etc.).

A sentence is reasonable if the Court "gives meaningful consideration to the factors enumerated in 18 U.S.C. § 3553(a), including the advisory sentencing guidelines, and arrives at a sentence that is objectively reasonable in light of the statutory factors and the individual circumstances of the case." *United States v. Boroczk*, 705 F.3d 616, 623 (7th Cir. 2013) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). Sentencing judges "have discretion over how much weight to give a particular factor. While the weighing must fall 'within the bounds of reason,' those bounds 'are wide.' " *Boroczk* at 624 (quoting *United States v. Reibel*, 688 F.3d 868, 872 (7th Cir. 2012)). I weighed all of the statutory factors and concluded that the need for deterrence, the need to promote a respect for the law, just punishment, and the seriousness of the crimes committed by Thorpe merit the most significant

consideration.

*General Deterrence*

The principle of general deterrence is premised on an assumption that imposing an appropriate sentence will dissuade others from committing similar crimes. In this case, I concluded that a sentence of imprisonment above the Guidelines range is required to effectively deter those in positions of trust from abusing their power for their own enrichment. Defendant had access to significant sums of money with relatively little day-to-day oversight of his activities; a combination that is not uncommon in local governmental entities. While reports and audits provide some accountability, the reality is that most systems rely on public officials to be honest or at least to resist temptation. The lure of taking advantage of a governmental position of trust is obvious.

The Seventh Circuit has recognized the importance of general deterrence in sentencing for white collar crimes: "We previously have endorsed the idea that white-collar criminals act rationally, calculating and comparing the risks and the rewards before deciding whether to engage in criminal activity. They are, therefore, prime candidates for general deterrence." *United States v. Brown*, 880 F.3d 399, 405 (7th Cir. 2018) (quoting *United States v. Warner*, 792 F.3d 847, 860–61 (7th Cir. 2015)). Exploiting a position of public trust by embezzlement is the type of rational and calculated crime that is most susceptible to general deterrence. As a counterbalance for those without adequate conscience, the resulting punishment must send a message to other public officials that giving in to temptation will indeed lead to prison, and for a significant stretch of time. Imposing a term of imprisonment above the advisory Guidelines serves this purpose in this case.

*Specific Deterrence and the Promotion of Respect for the Law*

Thorpe led a largely blameless life prior to defrauding the citizens of Zeigler, at least

from a criminal conviction standpoint.  As a result, there is no data from prior convictions or incarcerations from which to gauge his likely response to various levels of punishment.  However, the nature and circumstances of his offense, including his willingness to look his neighbors and co-workers in the eye while plundering large amounts of money from them over more than four years, suggests that Defendant requires more correction than his lack of criminal history indicates.  Even after he was caught, brought up on charges and confronted with the entirety of his misconduct, he expressed very little, if any, remorse.  Based on these facts, I find that the goals of specific deterrence and promotion of respect for the law warrant a period of incarceration above the calculated Guidelines range.

### *Just Punishment and Seriousness of the Crime*

The need for just punishment and the seriousness of Thorpe's crimes also weigh in favor of an upward variance in this case.  Thorpe's thefts were crimes of greed, not desperation.  He spent the citizens' money largely on luxury and recreational items.  While embezzlement is a serious crime regardless of motivation, there is a significant difference between someone who steals for basic necessities versus one who like Thorpe, steals to indulge his fantasies of material wealth.

More importantly, public corruption and the abuse of positions of trust for personal gain undermine the public's faith in our system of government.  "[A] democracy is effective only if the people have faith in those who govern, and that faith is bound to be shattered when high officials and their appointees engage in activities which arouse suspicions of malfeasance and corruption."  *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 562 (1961).  Betrayals of public trust are even more damaging when committed at a local level by someone believed to be a trustworthy friend and neighbor.  The only way to restore public confidence in these circumstances is to assure that just and significant punishment is meted out.

> We need not resign ourselves to the fact that corruption exists in government….The only way to protect the public from the ongoing problem of public corruption and to promote respect for the rule of law is to impose strict penalties on all defendants who engage in such conduct, many of whom have specialized legal training or experiences. Public corruption demoralizes and unfairly stigmatizes the dedicated work of honest public servants. It undermines the essential confidence in our democracy and must be deterred if our country and district is ever to achieve the point where the rule of law applies to all—not only to the average citizen, but to all elected and appointed officials.

*United States v. Spano*, 411 F. Supp. 2d 923, 940 (N.D. Ill.), aff'd, 447 F.3d 517 (7th Cir. 2006).

I have determined that a sentence of 48 months of imprisonment is warranted and necessary to reflect the seriousness of Thorpe's crimes and represents just punishment in this case.

## CONCLUSION

I am aware the sentence I am imposing represents a significant variance from the range of punishments suggested by the Guidelines. I do not do so lightly. However, I am persuaded that on balance, a sentence of incarceration within the Guidelines range would be less than necessary to serve the goals of sentencing as set forth in 18 U.S.C. § 3553(a).

**IT IS SO ORDERED.**

**DATED: October 29, 2018**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**